IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MONDAY NOSA AGHO and                                         PLAINTIFFS
ELLEN AGHO

v.                                           CIVIL ACTION NO. 3:12cv617-DPJ-FKB

BANK OF AMERICA, N.A., as successor
by merger to BAC HOME SERVICING, L.P.                       DEFENDANT

ORDER

This fraud and breach-of-contract case is before the Court on the alternative Motions to

Dismiss [5] and for Summary Judgment [7] filed by Defendant Bank of America, N.A., as

successor by merger to BAC Home Loans Servicing, L.P. (BANA).  Most of BANA's

dispositive arguments go beyond an attack on the sufficiency of Plaintiffs' Complaint and seem

premature in light of this case's pre-discovery posture.  For the reasons that follow, BANA's

Motion to Dismiss will be granted in part but otherwise denied, and its Motion for Summary

Judgment will be denied without prejudice.

I.      Facts and Procedural History

On August 23, 2007, Plaintiff Monday Agho executed a promissory note in the amount of

$376,000 payable to Realty Mortgage Corporation (RMC), and Plaintiffs Monday and Ellen

Agho executed a Deed of Trust in favor of RMC to secure repayment of the Note.  The terms of

the Note required Agho to make monthly payments of $2,596.94.  Thereafter, RMC assigned

Plaintiffs' Deed of Trust to Countrywide, which was subsequently acquired by BANA.

In May 2009, Mr. Agho received a letter from BANA stating that he might be eligible for

a loan modification under the federal Home Affordable Modification Program.  This

correspondence instructed him to call BANA "to get started."  Notice of Removal [1] Ex. 3, May

14, 2009 Letter.  Plaintiffs allege that Mr. Agho submitted "all of the required documentation and other information requested" in response to this letter and that he "did not hear from [BANA] again until he received a packet of documents and a letter dated July 24, 2009, informing him that he was approved to enter into trial period payments under HAMP."  Compl. [1-2] ¶¶ 22, 24.  Plaintiffs allege that Mr. Agho made the required trial-period payments and otherwise "complied with the terms of the July 24[,] 2009 offer" until BANA notified him, in September 2010, "that he was not eligible for the Home Affordable Modification Program."  *Id.* ¶¶ 29, 33.  Instead, BANA threatened to accelerate Mr. Agho's mortgage.  Thereafter, in lieu of foreclosure, BANA approved Agho for an in-house loan modification under which monthly payments of $3,388.00 were required effective February 1, 2011.

On August 1, 2012, Plaintiffs filed this lawsuit in the Circuit Court of Hinds County, Mississippi, alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, promissory estoppel, violations of the Mississippi Mortgage Consumer Protection Act, and infliction of emotional distress.[1]  BANA removed the case to this Court and, on September 20, 2012, filed its Motion to Dismiss or Alternative Motion for Summary Judgment [5, 7].  The matters raised have been fully briefed, and the Court has personal and subject-matter jurisdiction and is prepared to rule.

---

[1]Plaintiffs conceded their claim under the Mississippi Mortgage Consumer Protection Act in response to Defendant's motion.  Pls.' Resp. [15] at 7.

II.      Standard

    A.      Rule 12(b)(6)

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Supreme Court's examination of the issue in *Iqbal* provides a framework for examining the sufficiency of a complaint.  First, the district court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

3

B.      Rule 12(d)

Ordinarily, a court decides a motion to dismiss for failure to state a claim looking only at

the face of the complaint; if "matters outside the pleadings are presented to and not excluded by

the court, the motion shall be treated as one for summary judgment."  Fed. R. Civ. P. 12(d); *see*

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2011).  Documents attached to a

motion to dismiss that are "referred to in the plaintiff's complaint and . . . central to [his] claim,"

however, are considered part of the pleadings for purposes of a motion under Rule 12(b)(6).

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

According to the Fifth Circuit, "Rule 12(d) gives a district court 'complete discretion to

determine whether or not to accept any material beyond the pleadings that is offered in

conjunction with a Rule 12(b)(6) motion.'"  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847

F.2d 186, 194 n. 3 (5th Cir. 1988) (citing 5 C. Wright & A. Miller, *Federal Practice and*

*Procedure* § 1366 (1969); *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 414–15 (5th

Cir. 1980)).  In this case, the Court will consider the motion under Rule 12(b)(6) in part because

discovery has not begun and Plaintiffs have invoked Rule 56(d).  This ruling is without prejudice

to Defendant's right to seek summary judgment at a later date.

III.    Analysis

BANA first argues that the Complaint fails to state a claim upon which relief can be

granted.  The parties have submitted a number of documents in support of and in opposition to

BANA's motion, only some of which are properly considered at the Rule 12(b)(6) stage.

Specifically, the Court concludes that the following documents are "referred to in the plaintiff[s']

complaint and . . . central to [their] claim," such that the Court may consider them in ruling on

4

BANA's motion to dismiss:  the Note [5-1], the Deed of Trust [5-2], the May 14, 2009 correspondence from BANA to Mr. Agho [14-1], the July 24, 2009 correspondence from BANA to Mr. Agho [5-3], the signed Trial Period Plan and accompanying documentation [5-4], the September 8, 2010 denial of HAMP modification [5-11, 14-8], the September 14, 2010 Notice of Intent to Accelerate [14-9], the December 10, 2010 BANA correspondence approving the loan modification [14-11], and the December 22, 2010 signed loan modification agreement [14-12]. *Causey*, 394 F.3d at 288.  The Court has considered only these documents in assessing the Complaint under Rule 12(b)(6) and will address each of Plaintiffs' claims in turn.

    A.    Breach of Contract

    Plaintiffs allege that the Trial Period Plan (TPP), which Mr. Agho executed on August 17, 2009, was "a valid contract," whose "terms and conditions . . . were clearly outlined in numerous written agreements."  Compl. [1-2] ¶ 45; Pls.' Resp. [15] at 11.  Plaintiffs allege that BANA breached that contract when it "fail[ed] to offer Mr. Agho a permanent HAMP modification within forty-five days of Mr. Agho's acceptance of the offer" and when it "add[ed] unwarranted fees, costs, interest and other charges to Mr. Agho's loan."  Compl. [1-2] ¶¶ 47, 49. BANA seems to accept that the TPP is a valid contract, but asserts that it alone governs the contractual relationship between the parties, that none of the alleged terms Plaintiffs rely upon actually appear in the TPP, and that BANA therefore did not breach the contract.  *See* Def.'s Rebuttal [16] at 5 (arguing that the terms relied on by Plaintiffs appear in documents other than the TPP).

    BANA is correct that the terms on which Plaintiffs rely do not appear in the TPP.  The terms were, however, among the paperwork BANA sent with the TPP.  Specifically, the cover

letter accompanying the TPP and explaining the Making Home Affordable Modification Program

stated: "**There are no fees associated with this program.**"  Mot. to Dismiss [5] Ex. C, July 24,

2009 Correspondence at 2.  Also enclosed with the July 24, 2009 letter was a document entitled

Important Program Information, which noted that "[t]here are no fees under the Home Affordable

Modification program."  *Id.* at 7.  And the July 24, 2009 mailing included a Frequently Asked

Questions document that included the following:

> **How long will it take to process my modification request and determine if I qualify for the program?**
>
> It may take up to 45 days for us to review your documents once they are received. We will process your modification request as quickly as possible.  Please note that your modification will not be effective unless you meet all of the applicable conditions, and you are notified in writing that your modification has been approved.

*Id.* at 8.

The TPP itself indicates that it is "**Step One of Two-Step Documentation Process**," and

states:

> If I am in compliance with this [TPP] and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement . . . as set forth in Section 3. . . .
>
> If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income . . . to determine whether I qualify for the offer described in this Plan . . . . I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer.  This Plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.

Mot. to Dismiss [5] Ex. D, TPP Agreement, at 1.  The TPP further provides:

6

If prior to [December 1, 2009], (I) the Servicer does not provide me a fully executed copy of this Plan and the Modificiation Agreement, (ii) I have not made the Trial Period payments required under Section 2 of this Plain, or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate.  In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (I) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) [December 1, 2009] has passed.  I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

. . .  If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date.

*Id.* at 2–3.

Because neither party has fully addressed the extent to which any contract between the parties—assuming one exists—may have included terms and conditions set forth in documents other than the TPP itself, the Court concludes that Rule 12(b)(6) dismissal is not warranted.  *Cf. One South, Inc. v. Hollowell*, 963 So. 2d 1156, 1164 ("[S]eparate agreements executed contemporaneously by the *same parties*, for the same purposes, and as part of the same transaction, are to be construed together." (citations omitted)).

B.      Breach of the Covenant of Good Faith and Fair Dealing

BANA argues that Plaintiffs' claim for breach of the covenant of good faith and fair dealing fails as a matter of law because BANA did not breach the contract.  Def.'s Mem. [6] at

17. But as noted above, the Court concludes that the breach-of-contract claim does not fail as a matter of law, at least at this stage. As such, BANA has not demonstrated its entitlement to dismissal of the good faith and fair dealing claim.

       C.      Fraud

BANA contends that Plaintiffs' fraud claim should be dismissed for failure to plead the claim with particularity as required by Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby.'" *Tel-Phonic Servs., Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990)). Under Mississippi law, to state a claim for fraud, a plaintiff must plead with factual particularity the following nine elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; [and] (9) his consequent proximate injury.

*Smith v. Union Nat. Life Ins. Co.*, 187 F. Supp. 2d 635, 650 (S.D. Miss. 2001) (citation omitted). "In pleading the elements of an actionable fraud claim, the underlying allegations must be factual and not conclusory." *Da Luz v. Five Star Contractors*, No. 1:09cv268-HSO-JMR, 2012 WL 1070117, at *5 (S.D. Miss. Mar. 29, 2012) (citing *Smith*, 187 F. Supp. 2d at 650). "Rule 9(b) requires the who, what, when, where, and how of a fraud claim to be laid out." *Id.* (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).

8

A review of the Complaint reveals that Plaintiffs fail to plead a fraud claim with the requisite particularity.  The only specific misrepresentation alleged is that BANA "misrepresented to Mr. Agho that his monthly mortgage payments through the modified loan would be lower than his existing payments."  Compl. ¶ 57.  Plaintiffs further allege generally that they "relied on the oral and verbal statements" of BANA to their detriment.  *Id.* ¶ 59.  Plaintiffs do not explain when, how, or by whom any alleged misrepresentations were made.  As such, their fraud claim is not pleaded with the particularity required by Rule 9(b) and it will be dismissed without prejudice to Plaintiffs' right to move to amend their Complaint to re-plead the claim.

D.     Promissory Estoppel

BANA states that Plaintiffs' promissory estoppel claim fails as a matter of law because the terms of the Note, Deed of Trust, and TPP alone "outline the agreements regarding the Plaintiffs' mortgage and the subject property."  Def.'s Mem. [6] at 20.  It further asserts that their promissory-estoppel claim is barred by the statute of frauds.

"[N]either the lack of consideration nor the statute of frauds can bar the enforcement of an agreement where promissory estoppel is appropriate."  *Thompson v. First Am. Nat. Bank*, 19 So. 3d 784, 788 (Miss. Ct. App. 2009) *cited in Sukup Mfg. v. Rushing*, 634 F. Supp. 2d 694, 696 (S.D. Miss. 2009) (Lee, J.).  "A party seeking to establish promissory estoppel must show (1) a promise; (2) that the promise induced action of a definite and substantial character on the part of the promisee; and (3) that the promisor reasonably should have expected the promisee's action."  *Sukup Mfg.*, 634 F. Supp. 2d at 697 (citations omitted).

9

The Court concludes that Plaintiffs have stated a promissory estoppel claim that withstands BANA's Rule 12(b)(6) arguments.  Plaintiffs allege that BANA made promises to them in the TPP and accompanying paperwork that induced Mr. Agho into making modified payments under the TPP.  Compl. [1-2] ¶¶ 65–68.  Plaintiffs' claim survives for now.

E.      Infliction of Emotional Distress

BANA argues that Plaintiffs have not pleaded facts indicating outrageous conduct sufficient to state a claim for intentional infliction of emotional distress.  "To justify a finding that this tort has occurred, the defendant's conduct must be 'wanton and wilful [such that] it would evoke outrage or revulsion.'"  *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001) (citing *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995)).  A defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996) (quoting Restatement (Second) of Torts § 46 cmt. d).

A review of the Complaint reveals no allegations of "intolerable, outrageous or revolting" conduct by BANA.  *Speed*, 787 So. 2d at 631.  While the alleged imposition of unwarranted fees and costs and a "fabricated" deficiency balance could support Plaintiffs' other claims, the facts alleged simply do not "go beyond all possible bounds of decency."  *Pegues*, 913 F. Supp. at 982.  As such, the intentional-infliction-of-emotional-distress claim will be dismissed without prejudice.

10

IV.     Conclusion

The Court has considered all of the parties' arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, BANA's Motion to Dismiss [5] is granted in part but otherwise denied.  Plaintiffs' fraud and intentional infliction of emotional distress claims are dismissed without prejudice.  Plaintiffs' claim based on the Mississippi Mortgage Consumer Protection Act is withdrawn and therefore dismissed with prejudice.  BANA's Motion for Summary Judgment [7] is denied without prejudice.

**SO ORDERED AND ADJUDGED** this the 10th day of July, 2013.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE